

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB:ALB
F. #2003R00558

*United States Attorney's Office*
*610 Federal Plaza*
*Central Islip, New York 11722-4454*

March 18, 2009

The Honorable Arthur D. Spatt
Senior United States District Judge
Eastern District of New York
U.S. Courthouse and Federal Building
1024 Federal Plaza
Central Islip, New York 11722

  Re: United States v. Louis Fenza
    <u>Criminal Docket No. 03 CR 921 (S-1) (ADS)</u>

Dear Judge Spatt:

  The government hereby writes in response to defense counsel's letter dated March 5, 2009. Specifically, defendant FENZA objects to the Sentencing Guidelines inclusion of 1) one-point based upon a demand for more than $10,000 from Elliot Hurdy and the Huntington Townhouse (PSR ¶ 40); 2) paragraphs 13-18 of the PSR which describe the Colombo Organized Crime Family; 3) paragraphs 23-24, and 27 of the PSR regarding the extortion of Barr Industries; 4) paragraphs 30-33 of the PSR which describe the alleged activities of FENZA's Co-defendant LETO; as well as 5) paragraphs 55-59 regarding claimed inaccuracies with FENZA's prior criminal history.

  <u>The Huntington Townhouse Extortion Conspiracy</u>

  Defendant FENZA objects to the PSR inclusion of one-point for a demand greater than $10,000, claiming that there was no evidence at trial to the identity of the individual or limousine company who made the alleged demand. (Def. Letter at p. 5, ¶¶ 3, 8). This argument ignores the convictions the Jury found against FENZA. In this case the Jury conclusively found that FENZA agreed to obtain money from the Huntington Townhouse with the consent of Hurdy, which consent was induced by the wrongful use of actual and threatened force, violence, and fear, in violation of 18 U.S.C. § 1951(a). (PSR ¶ 3-4). The identity of the third party was not required to convict FENZA of his crimes. Regardless of the identity of the third party, the facts clearly indicate that once Mr. Hurdy began making payments to FENZA and LETO the threatening phone calls ceased. (PSR ¶ 21).

  Defendant FENZA also claims that inclusion of this demand

is inappropriate as the Huntington Townhouse refused to pay the sum owed. (Def Letter at p. 5, ¶ 8). This argument ignores the testimony at trial regarding the demand to pay a $25,000 limousine debt. Specifically, Elliot Hurdy testified that just a few months after Colombo soldier FRANK "Chickie" LETO introduced LOUIS FENZA at the Huntington Townhouse, FENZA arranged for limousines to be used at an oldies concert. (Tr. at 986-87). The limousine company claimed that the Huntington Townhouse owed twenty-five thousand dollars, and threatened to hurt Elliot Hurdy's family if the debt wasn't paid. (Tr. at 988). Hurdy testified that the limo company told him "if you don't get me money, I'm going to hurt Rhona and Howie." (Id.). Hurdy further testified that LOUIS FENZA came to him to discuss the problem and stated "try to work out the dispute, but we have to pay them." (Tr. at 989). Elliot Hurdy explained that LOUIS FENZA moderated a deal to payoff the debt, and that he began giving cash envelopes to Chickie LETO and LOUIS FENZA. (Tr. at 991).

The jury unequivocally found that this activity on the part of LETO and FENZA was part of an extortion conspiracy. As such, the plain language of U.S.S.G. § 2B3.2(b)(2) requires the application of this enhancement. See United States v. Zhuang, 270 F.3d 107, 109 (2d Cir. 2001)(district court did not err in applying a two level upward adjustment on the basis of the $68,000 demand where the defendant agreed to take considerably less, as "§ 2B3.2 enhancement is made to depend . . . on the greater of the victim's loss or the amounts demanded from the victim."); United States v. Knox, 68 F.3d 990, 1002 (7th Cir. 1995) (enhancement based on $33,000 amount demanded upheld, even though there was no potential loss to the victim).

Finally, the government notes that in considering this question as to the co-defendant LETO, the Court found that the amount demanded was greater than $10,000. See Transcript of Sentencing of Defendant Leto, dated January 23, 2009, at 22.[1]

### Relevance of the Colombo Crime Family

Defendant FENZA argues that the information contained in PSR paragraphs 13-18 are not relevant to his sentencing and that the inclusion of solely paragraph 19 satisfies the Jury's finding as to FENZA's involvement in the enterprise. (Def. Letter p. 4 ¶1). The elements discussed in paragraph 13-18 are relevant to

---

[1] A copy of this transcript is being provided to the Court as well as defense counsel, however, due to its length, it is not being filed via ECF.

FENZA's conviction. Paragraphs 13 through 17 set out the formal structure of the Colombo Family. These paragraphs show that the Colombo family constituted an "enterprise" as defined in 18 U.S.C. §1961(4). This was a necessary and relevant element to Fenza's conviction on Counts One and Two. An enterprise is "a formal or informal group of persons, 'associated for a common purpose of engaging in a course of conduct' which then functions as a 'continuing unit.'" SKS Constructors, Inc. v. Drinkwine, 458 F.Supp.2d 68, at 76-77 (E.D.N.Y. 2006); citing United States v. Turkette, 452 U.S. 576, 583 (1981). In order to conform with the Second Circuit's interpretation of "enterprise" the inclusion of paragraphs 13-18 are required.

Paragraph 13 sets out the basic requirement that the Colombo Crime Family constituted an "enterprise" under the broad language of 18 U.S.C. §1961(4). Paragraph 14 describes the basic structure of the "enterprise;" specifically, the role and rank of the captains, the soldiers, and associates. This paragraph is especially relevant to distinguish between the common interpretation of "associate" and the specific meaning it had in FENZA's role within the Colombo Crime Family.

Paragraph 15 and 16 discuss the leadership of the "enterprise." Paragraph 17 describes the role of the Colombo Crime Family within the context of the nationwide "Mafia" or "La Cosa Nostra." This is salient to FENZA's conviction in that these three paragraphs taken together describe FENZA's involvement with an "enterprise" that was a "continuing unit."

Paragraph 18 is relevant to FENZA's conviction as it outlines that the Colombo Crime Family was united in a common purpose. This common purpose is to generate money for its members and associates through various criminal activities.

In sum, paragraphs 13-18 are relevant to FENZA's conviction and thus validly incorporated into the PSR. See Rule 32(d) of the Federal Rules of Criminal Procedure.

<u>The Extortion of Barr Industries</u>

Defendant FENZA argues that PSR paragraphs 23-24 and 27 must be redacted since he was not charged with the Barr Industries extortion. (Def. Letter p. 5, ¶ 4). While Mr. FENZA is correct in that he was not charged with involvement in the Barr Industries extortion, FENZA's observed conduct is still relevant to the charges he was convicted of. "Evidence of uncharged criminal conduct may be properly introduced in racketeering prosecutions in order to establish the existence, organization, nature, and

membership of the alleged criminal enterprise." United States v. Petrucelli, 97 Fed. Appx 355, 358 (2d Cir. 2004)(unpub.); See United States v. Diaz, 176 F.3d 52, 80 (2d Cir. 1999); United States v. Miller, 116 F.3d 641, 682 (2d Cir. 1997); United States v. Wong, 40 F.3d 1347, 1378 (2d Cir. 1994). FENZA's association with Colombo Crime Family members, including LETO during the Barr Industries extortion is relevant to FENZA's membership in the Colombo Crime Family and association with LETO.

### LETO's Activities

Defendant FENZA argues that paragraphs 30-33 are irrelevant to Mr. FENZA's conviction and subsequent sentencing as they only discuss the role of Mr. LETO. (Def. Letter p.5 ¶6). However, the conduct and acts of FENZA's immediate supervisor and co-defendant are extremely relevant to both sentencing and subsequent use by the Bureau of Prisons. "[I]t is appropriate to include information about co-conspirators in the PSR where the description distinguishes the co-conspirators and accurately describes the defendant's role in the offense." United States v. Zitello, 1993 WL 62394 (N.D.Ill. 1993).

### FENZA's Past Criminal History

Defendant FENZA argues that paragraphs 55-59 are wrongfully included in the PSR based on the lack of accuracy in the statements. (Def. Letter p. 5, ¶ 9). The disputed paragraphs deal with FENZA's past criminal history. Under Rule 32(d)(2)(a)(i) of the Federal Rules of Criminal Procedure the PSR is required to include information on the defendant's past criminal acts. Also, according to 18 U.S.C. §3661, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

FENZA has simply stated that these statements are not accurate, yet has not supplied any specifics on what exactly is inaccurate. The Probation officer has relied on information obtained from the U.S. Department of Labor and records maintained by the Probation Department. (PSR ¶55). While it is recognized that the information was not complete, FENZA does not specify what he claims to be factually inaccurate.

### Conclusion

The remainder of FENZA's sentencing arguments address

-4-

Section 3553(a) factors and mitigating claims. The government relies upon the Court's discretion in addressing these arguments and, if appropriate, the government will address these matters orally at sentence. Thank you for your consideration.

                                    Respectfully submitted,

                                    BENTON J. CAMPBELL
                                  United States Attorney

By: _____
     Allen L. Bode
     Assistant U.S. Attorney

     _____
     Nicole Boeckmann
     Assistant U.S. Attorney

cc: Attorneys for LOUIS FENZA
    Louis Fasulo, Esq.
    Aaron M. Goldsmith, Esq.
    Fasulo, Shalley & DiMaggio, LLP
    225 Broadway, Suite 715
    New York, New York 10007
    FSDLAW@AOL.COM